CULPEPPER, Judge.
Plaintiff, Clevis Romero, seeks workmen’s compensation benefits for a disabling neurosis allegedly resulting from an injury received in the course of his employment by Pullin Molded Products, Inc., the insured of defendant, Travelers Insurance Company. From an adverse judgment on the merits, plaintiff appeals.
The substantial issue on appeal is whether plaintiff’s present disabling neurosis is causally related to the work-accident.
The general facts are that Romero is 55 years of age, married, the father of 10 children, 5 of whom are minors still living at home, wholly uneducated, and speaks little or no English, but rather French. He has worked all his life as a painter and laborer.
On the day of the accident, January 21, 1966, he was working at the Pullin plant in New Iberia as a laborer. He and a fellow-employee were carrying a 200 pound sack of material. The co-worker dropped *192 his end of the sack, causing Romero to slip and injure his side. Dr. Phillip Culotta, a surgeon, diagnosed a left inguinal hernia which was surgically repaired on February 1, 1966. Romero remained in the hospital until February 6, 1966, when he returned home. Post-operative recovery was normal and he was discharged by Dr. Culotta as able to return to work on March 30, 1966.
On March 31, 1966, Romero returned to work for Pullin and was assigned lighter duties as a janitor and clean-up man, but at the same pay. He continued in that capacity until May 19, 1966 when he was laid off in a general company lay-off, which was not connected with his injury.
After being laid off, Romero complained of pain in his side and was sent by his attorney to Dr. Edgar P. Breaux, a surgeon in Lafayette, on June 3, 1966. However, this physician found plaintiff had completely recovered from his hernia and was able to return to full duty.
Still complaining of pain in his side, Romero went back to see Dr. Culotta on June 21, 1966. This physician also found plaintiff had completely recovered from the hernia, but he noticed that Romero appeared to be very nervous.
Romero was first seen by a psychiatrist, Dr. Luis Alvarez, on August 8, 1966, a period of about 3 months after the lay-off and about 7 months after the accident and surgery. This physician, who is still treating plaintiff, found he is' suffering from a “severe conversion reaction which is characterized by nervous depression and anxiety.” He said the condition is disabling and that it was caused by the entire chain of events, i. e. the accident, the surgery, the lay-off and plaintiff’s worry and anxiety that he 'cannot work and support his wife and 5 minor children.
Romero was then examined by 2 additional psychiatrists. At the request of the defendant, he was seen on October 16, 1966 by Dr. Thomas Rafferty, a highly qualified Board-Certified, psychiatrist. Essentially, this physician’s opinion was that due to the lapse of time between the hernia operation on February 1, 1966 and the “reaction depression” whose symptoms first began to manifest themselves in late May or early in June, there was no connection between the neurosis and the accident.
At the request of plaintiff’s attorney, Romero was examined on October 15, 1966, by Dr. William Sorum, also a highly qualified, Board-Certified, psychiatrist. This physician diagnosed a depressive reaction with hysteria and, based on the history which was given him by Romero, as interpreted by his wife, was of the opinion that the neurosis was causally connected with the accident, injury and surgery. However, it is fairly clear from the testimony of Dr. Sorum that the history on which he relied was to the effect that the neurotic symptoms began with the surgery. For instance, at Tr. 40 we find Dr. Sorum giving his understanding of the history as follows:
“He was operated on and had begun getting depressed and since that time since the operation he began getting very depressed, progressively nervous, tensed, nervous, insomnia, anorexia, a shortness of breath and all these symptoms which are often associated with anxiety and depression and so I felt that this apparently — this chain of events had apparently started from the time of the accident, getting worse undoubtedly after the operation as he felt a threat to his welfare.”
In other parts of his testimony, Dr. Sorum makes it clear he did not know that Romero had returned to work at the Pullin plant for 6 or 7 weeks (Tr. 55); and that it was almost 7 months after the operation before plaintiff was seen by Dr. Alvarez (Tr. 63, 64). Dr. Sorum states that if he had known these facts, his testimony and diagnosis might be different. (Tr. 55). This physician’s opinion was based in part on his understanding that the neurotic symptoms started soon after the accident and operation (Tr. 67).
*193 Dr. Clayton B. Edison, also a Board-Certified psychiatrist, testified for the defendant in a deposition. He did not actually see the plaintiff but, instead, gave his opinion from the medical history which we find to be correct, i. e. that the neurotic symptoms did not begin until after the lay-off. It is this physician’s opinion that the onset of traumatic neurosis should normally begin within 2 weeks of the incident causing it. Hence, in the present case, the probable cause of the neurosis is not the accident or the surgery, but, instead, is the lay-off.
Now turning to the lay-witnesses, we find plaintiff, his wife and her sister, Mrs. Blanchard, testifying that the nervous symptoms began before the lay-off.
On the other hand, the foreman and several co-workers testified for defendant that during the 6 or 7 week period when plaintiff returned to work, he did not complain and did not appear to be unusually nervous or to show any other neurotic symptoms.
The trial judge evaluated the testimony of these lay-witnesses, as well as that of Dr. Culotta and Dr. Breaux, who apparently found no nervous symptoms before the layoff, and concluded as a fact that these symptoms did not start until some time after the lay-off.
Although disability due to traumatic neurosis is compensable under our Workmen’s Compensation Law, our jurisprudence is established that, due to the vague and nebulous nature of this condition, the evidence supporting such a claim must be carefully scrutinized.[1] We agree with the trial judge that the evidence here is not sufficient to prove a causal relationship between the neurosis and the work-accident.
The testimony of plaintiff’s two psychiatrists is not sufficient to overcome the testimony of Drs. Rafferty and Edison, both Board-Certified psychiatrists, who expressed the opinion that the neurosis was probably not caused by the accident, injury or surgery. Particularly in view of the fact that these two had the correct history, under the trial court’s non-erroneous evaluation of the credibility of the plaintiff and the lay-witnesses.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.

. Jackson v. International Paper Company, 163 So.2d 362 (La.App., 3rd Cir. 1964) and cases cited therein.