BAILES, Judge.
This is an appeal by plaintiff, lola Wilk-son, from a judgment dismissing her suit in workman’s compensation for total and permanent disability benefits.
The question posed for our determination is one of fact: that is, was plaintiff disabled during the period September, 1964, to July, 1966, by reason of a psychoneurotic disorder resulting from the accident sustained at the Baton Rouge General Hospital, December 31, 1963? We should point out that on this appeal plaintiff-appellant does not contend that she was physically disabled during the *98 period in question. As is quite evident from the orthopedic and neurological testimony briefly summarized later in this opinion, though plaintiff had unquestionably proved a physical injury, she has failed to prove physical disability subsequent to her discharge by a treating physician, Dr. Means, in September of 1964. Therefore, her case must rest on disability resulting from neurosis.
Recovery of compensation benefits based on psychoneurotic disability is, of course, recognized by our jurisprudence. However, a plaintiff must prove his claim of psychoneurotic disability to a legal certainty by a reasonable preponderance of the evidence. Bailey v. Avondale Shipyards, Inc., La.App., 198 So.2d 409. Moreover the evidence in such a case must be subjected to extremely careful and cautious scrutiny due to the vague, nebulous and subjective nature of the disability. Romero v. Travelers Insurance Company, La.App., 198 So.2d 191. In the light of these requirements, we find that plaintiff has not proved her case. The judgment appealed from will be affirmed.
Plaintiff was employed in the housekeeping department of the Baton Rouge General Hospital as a maid. On December 31, 1963, she sustained back injuries as she was lifting a suction machine. Treatment for her injury was begun immediately under the direction of Dr. Francis C. McMains, an orthopedic surgeon.
Dr. McMains diagnosed her difficulty as an acute lumbosacral strain. He treated her conservatively in the hospital for approximately nine days after which he saw her on an outpatient basis. His diagnosis of lumbosacral strain was confirmed by Dr. Joseph M. Edelman, a neurosurgeon, who examined plaintiff on January 2, 1964, and ruled out the possibility of a herniated disc. Objective symptoms persisted until mid-March, 1964. On April 20th, Dr. McMains discharged plaintiff because of his inability to discover objective evidence of orthopedic pathology. Due, however, to plaintiff’s persistent complaints he arranged for her to see Dr. Richard B. Means, another orthopedic surgeon.
Dr. Means saw plaintiff the following day. He was impressed with plaintiff’s complaints and felt they indicated a ruptured disc. Under his charge she was again admitted to the hospital and upon improvement was released for outpatient treatment. In July he advised that she undergo a myelo-gram. The results were negative. On August 28, 1964, examination failed to produce objective symptoms and it was Dr. Means’ opinion that plaintiff had recovered sufficiently to return to any activity. She was discharged. Plaintiff returned in September but Dr. Means was again unable to find any objective symptoms for her complaints. Compensation which had been paid up to this point was terminated.
In March, 1965, plaintiff was examined by Dr. Charles B. Cracraft. To this orthopedic surgeon plaintiff complained of pain in the low part of her back, right leg and intermittent pain in her neck. He found that plaintiff had suffered a lumbosacral strain but had completely recovered and could resume normal activity. Her complaint of pain and disability could not be supported by obj ective symptoms.
In July of 1965, plaintiff began treatment under Dr. L. F. Magruder, a psychiatrist. He diagnosed her difficulty as conversion reaction, a psychoneurotic disorder which was a direct result of the accident she sustained at the Baton Rouge General Hospital. Plaintiff was seen by Dr. Magruder periodically during the remainder of 1965 and twice during 1966, the last visit being on July 19th. Plaintiff admits complete recovery as of that date. On this appeal she seeks compensation only for the perio4 September, 1964, the time at which compensation benefits were terminated, to July, 1966, the time of recovery.
Plaintiff testified that after her discharge by Dr. Means late in August, 1964, she was able to do some work around her home. She enumerated the following chores as *99 those she could do without disabling pain: make beds, cook meals, vacuum floors, wash and hang clothes, tend a grandchild and walk in her rose garden. She stated that, she looked for work after being discharged by Dr. Means but only after being treated by Dr. Magruder from July 7, 1965, to August 17, 1965, did she find employment. At this time she worked for four or five months, including a temporary job as maid for Dr. Magruder. She testified further that on August 17, 1965, when Dr. Magruder dismissed her to go to work she could not find work near her home. The jobs she could find required that she use public transportation which involved several bus changes. These changes made her so nervous, anxious and tense that she was unable to continue with these jobs. At the time of trial she felt herself recovered sufficiently to return to work and was in fact working. Thus, though plaintiff contends that due to pain after her discharge by Dr. Means on August 28, 1964, she was unable to work, she testified that she was available for employment but could find no suitable job, that she could perform ordinary household chores and that after August 17, 1965, she worked intermittently at various jobs. No testimony was offered on her behalf by members of her family or other lay witnesses to substantiate her assertions of pain and inability to perform the tasks which would have been required of her as a maid. In addition, we note that a period of more than six and one half months elapsed between the time of her discharge by Dr. Means and the time she sought the medical aid of Dr. Cracraft, who at the time of his examination could find nothing wrong with plaintiff. It was another three months before Dr. Magruder was consulted.
Dr. Magruder testified that he first saw plaintiff on July 7, 1965. He diagnosed her difficulty as conversion reaction directly resulting from her accident and treated her with hypnotherapy. He stated that it was possible that a person could be disabled by this disorder, the absence o'f organic pathology in no way negativing functional inability to continue the former employment without pain. In this framework he considered plaintiff disabled during the period in question. He dismissed her on August 17, 1965, as having reached the maximum improvement but gave instructions that she was not discharged and was to return should further problems develop. Plaintiff in fact returned on March 9, 1966. She complained at the time of nervousness and tenseness due to problems connected with transportation to and from her job and difficulties in her home. The complaints did not directly relate to her back injury but Dr. Magruder considered them a continuation of emotional instability resulting from the back injury. The doctor then explained that in a true conversion reaction plaintiff’s anxieties should be completely converted into paralysis or pain in the back but in this case some of the anxieties were manifest as nervousness or tenseness. Therefore, he concluded that she suffered a mixed type conversion reaction. However, he testified that under “ * * * present classification and nomenclature, we cannot make a diagnosis of psychoneurosis, psycho-neurotic disorder, mixed type, we are not supposed to.”
Though a workmen’s compensation claimant is not barred from recovery of benefits because he is unable to specifically identify or classify the type of injury he has suffered, Patton v. Argonaut Underwriters Ins. Co., La.App., 110 So.2d 142, he must prove disability caused by injury sustained in the course of his employment. After careful study of the record before us we are unable to find that plaintiff has proved a disabling psychoneurotic disorder caused by the injury to her back. Though Dr. Magruder stated that the emotional problem with which plaintiff was apparently afflicted was caused by her injury at the Baton Rouge General Hospital, he admitted the existence of certain other psychic anxieties completely unrelated to the accident which were causes of her neurosis. His testimony does not preponderate to the legal certainty required by law in favor of the conclusion that plain *100 tiff’s neurosis was caused by the accident at the Baton Rouge General Hospital. We are buttressed in this conclusion by plaintiff’s own testimony. Not only did she testify that she sought employment during the period for which she now claims compensation and performed, in her own home, the same tasks required in her employment, she also corroborated Dr. Magruder’s testimony that she was subject to anxiety from causes not directly related to or associated with the accident or her former employment. Under these circumstances we cannot find that the trial court was in manifest error in concluding that plaintiff had failed to bear the burden of proving, to the certainty required by law, the existence of a disabling neurosis caused by her accident.
For the foregoing reasons the judgment appealed from is affirmed. All costs will be paid by appellant.
Affirmed.