163 So.2d 362 (1964)
Blanchard JACKSON, Plaintiff and Appellant,
v.
INTERNATIONAL PAPER COMPANY, Defendant and Appellee.
No. 1108.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1964.
Rehearing Denied May 13, 1964.
Writ Refused June 30, 1964.
*363 Mitchel M. Evans, DeRidder, for plaintiff-appellant.
Hall & Coltharp, by L. H. Coltharp, Jr., DeRidder, for defendant-appellee.
Before FRUGÉ, CULPEPPER and HOOD, JJ.
HOOD, Judge.
In this workmen's compensation suit, instituted by Blanchard Jackson against his employer, International Paper Company, plaintiff claims compensation benefits based on total and permanent disability, and also medical expenses, penalties and attorney's fees. After trial on the merits, judgment was rendered by the trial court rejecting plaintiff's demands, and plaintiff has appealed. Subsequent to the lodging of the appeal in this court, plaintiff filed a motion to remand the case to the district court for the introduction of additional evidence. That motion was referred to the merits, and it also is now before us for determination.

On the Merits
The evidence shows that at about 10:00 a.m. on August 24, 1961, plaintiff sustained an injury to his back during the course of his employment by defendant as a laborer at defendant's saw mill and lumberyard in DeRidder, Louisiana. Plaintiff testified that he felt a pain in his back as he was pulling a 60-pound roll of tar paper up to the roof of a building, with the use of a pulley. Although he continued to work until noon that day, he reported to Dr. Paul Strecker that afternoon and was treated by Dr. Strecker from that date until February 2, 1962. He was discharged by Dr. Strecker on the last-mentioned date as having fully recovered from his injury and as being able to return to his former employment. The defendant paid plaintiff all of the compensation benefits and medical expenses due from the date of the injury until February 2, 1962, but no compensation benefits have been paid to plaintiff since that time.
The principal issue presented on this appeal is whether the plaintiff has been disabled since February 2, 1962, within the meaning of the Workmen's Compensation Act. Plaintiff contends primarily that as a result of the accident he sustained an injury to his back which has totally and permanently disabled him from performing the type of work he was performing prior thereto. In the alternative, he contends that as a result of the accident he suffered a traumatic neurosis or a conversion hysteria which has disabled him. Defendant denies that plaintiff has been disabled since February 2, 1962.
Dr. Strecker, who is a general practitioner, is of the opinion that plaintiff sustained a "lumbosacral strain" as a result of the accident. After administering conservative treatment to plaintiff, without hospitalization, for a period of about six weeks, Dr. Strecker felt that plaintiff was then able to return to work. Since plaintiff continued to complain of pain in his back, however, he was referred to Dr. George P. Schneider, an orthopedic surgeon, for consultation and treatment. After being under the treatment of Dr. Schneider for about two weeks, plaintiff was referred back to Dr. Strecker who continued to treat him until February 2, 1962, when the doctor felt that he had completely recovered and was able to return to work.
Dr. Schneider examined plaintiff initially on October 10, 1961, and although he *364 could find no evidence of any abnormality he placed plaintiff in the hospital for observation and treatment because of plaintiff's continued complaints of pain. The treatment administered by Dr. Schneider during this period of hospitalization included the placing of plaintiff in traction. Upon plaintiff's release from the hospital he was referred back to Dr. Strecker with the recommendation that conservative treatment as an out patient be continued with sedation, muscle relaxants and reassurance by his treating physician that he was going to get well. Dr. Schneider examined plaintiff again on April 17, 1962, and from examinations made at that time he concluded that plaintiff had completely recovered from his injuries and that "he was able to go back to doing heavy manual labor."
After being discharged by the treating physicians, Dr. Strecker and Dr. Schneider, plaintiff was examined by a number of specialists, including three psychiatrists, one clinical psychologist and two neurosurgeons, all of whom testified by deposition. The testimony of these specialists, considered with that of the treating physicians, establishes that from an organic, orthopedic or neurological standpoint, plaintiff had fully recovered from this injury to his back by February 2, 1962, the date on which he was discharged by Dr. Strecker. The medical testimony is conflicting, however, as to whether plaintiff was disabled after that date because of a conversion reaction, hysteria or traumatic neurosis resulting from or related to the accident.
Dr. D. H. Texada, a psychiatrist, after examining plaintiff twice, came to the firm conclusion that he did not have a "traumatic neurosis or a conversion reaction or hysteria. Dr. Erle W. Harris, Jr., another psychiatrist, and Dr. Tom B. Ray, a clinical psychologist, testified to the effect that although plaintiff may have a conversion reaction they could not make a diagnosis to that effect on their findings or on the responses which they received to the tests which they administered to him. Dr. Alvin Cohen, a psychiatrist, who examined plaintiff once, concluded that he was disabled because of a traumatic neurosis. Dr. H. K. Faludi, a neurosurgeon, felt that plaintiff had a mild residual from a previous low back sprain, but he found no "anxiety in the psychiatric sense, that would be in need of psychiatric treatment." And, finally, Dr. James A. Brown, a neurosurgeon, diagnosed plaintiff's condition as traumatic neurosis and a possible herniated intervertebral disk. At his suggestion a myelogram was performed on plaintiff which was negative as to a herniated disk, and Dr. Brown thereupon concluded that plaintiff was disabled solely because of a conversion reaction which he related to the accident.
The trial judge, after carefully analyzing the testimony of each of the expert witnesses in his excellent reasons for judgment, concluded that plaintiff had failed to establish by a preponderance of the evidence that he was disabled because of a traumatic neurosis or a conversion reaction, and accordingly, plaintiff's demands were rejected. In analyzing the testimony of the doctors as to whether plaintiff has a neurosis, the trial judge said: "On the issue of traumatic neurosis or conversion reaction, the Court finds the evidence confusing. Dr. Texada, who saw Jackson on two occasions, was certain that Jackson did not present a case of traumatic neurosis or conversion reaction. Dr. Harris, who also saw Jackson on two occasions, concluded that it was beyond his ability to make a definite finding of neurosis or conversion reaction. Dr. Brown's diagnosis of conversion reaction is given no weight since his specialty is neuro-surgery and not psychiatry. The only unequivocal diagnosis of traumatic neurosis is that of Dr. Cohen, who saw Jackson once only. The Court believes that Dr. Texada, who examined Jackson on two occasions, had the better opportunity of evaluating Jackson, and *365 that his testimony should be given greater weight than that of Dr. Cohen."
It is well established that in a workmen's compensation suit, as is generally true in other types of civil actions, a plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Elliott v. Insurance Company of North America, La.App. 2 Cir., 159 So.2d 313 (Cert. denied); Thomas v. American Insurance Company, La.App. 1 Cir., 153 So.2d 918 (Cert. denied).
Disability due to a post traumatic neurosis has been recognized as being compensable under the Louisiana workmen's compensation law. When a compensation claim is predicated upon traumatic neurosis or conversion reaction, however, the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition. The evidence in cases of this nature should be scrutinized carefully and every precaution should be taken to protect employers and insurers against unjustified claims based on alleged mental affections. On the other hand, the danger of denying recovery to a deserving claimant is equally as apparent, and must be guarded against. Elliott v. Insurance Company of North America, supra; Brown v. Ceco Steel Products Corporation, La.App. 4 Cir., 136 So.2d 161; Mouton v. Travelers Insurance Company, La.App. 3 Cir., 135 So.2d 287; and Thomas v. American Insurance Company, supra.
In Mouton v. Travelers Insurance Company, supra, we said:
"The cases make it very clear that this neurosis theory, being very vague and nebulous, must be handled with a tremendous amount of caution. In cases where there is proof of malingering, our courts have been ready to accept such proof and to deny recovery to a malingering plaintiff. * * *" (135 So.2d 295).
And, in Thomas v. American Insurance Company, supra, our brothers of the First Circuit said:
"Any claim based on traumatic neurosis must be substantiated by competent psychiatric opinion. Usually psychiatrists base their diagnosis upon a history which is related to them by the patient. Since there is no known method to positively probe into the mind of man for his true feeling, thoughts, etc. there is an ever present danger that symptoms will be feigned, concocted and otherwise dreamed up in order to obtain a recovery judgment. On the other hand, there is a danger of denying recovery to a claimant who is actually disabled and deserving. * * *" (153 So.2d 920).
In the instant suit, although the medical experts disagree as to whether plaintiff is or is not disabled because of a traumatic neurosis or conversion reaction, most of them agree that he exaggerated his symptoms and attempted to mislead the examining physicians. Considering all of the evidence, and particularly the differing opinions of the medical experts who treated or examined plaintiff, we find, as did the trial judge, that plaintiff has failed to establish by a preponderance of the evidence that he has been disabled since February 2, 1962. In our opinion, therefore, plaintiff's demands were properly rejected.

On Motion to Remand
In his motion to remand plaintiff alleges that after judgment was rendered by the trial court he was examined by Dr. Arthur W. Epstein, a specialist in psychiatry and neurology, and that as a result of this examination Dr. Epstein concluded that plaintiff was disabled from a so called "compensation neurosis" and could not return to his present type of work. He demands that the case be remanded to permit the introduction of additional medical evidence.
*366 We recognize that an appellate court has the right to remand a case to the trial court in the interest of justice. And we agree that the claimant in a compensation case should be accorded the fullest opportunity to establish his claim in order to avoid, insofar as possible, a grave injustice which vitally affects him. Washington v. Hendrix Manufacturing Co., La. App. 2 Cir., 106 So.2d 528; Wade v. Calcasieu Paper Company, 229 La. 702, 86 So.2d 540; and Rawls v. Dixie Drilling Company, La.App. 3 Cir., 161 So.2d 417.
In our opinion, however, this rule ordinarily should not be applied in such a manner as to enable a claimant in a compensation case to obtain a remand simply for the purpose of introducing cumulative evidence, or evidence which was known to him or which by the exercise of reasonable diligence would have been available to him prior to the original trial if he had exercised reasonable diligence.
In the instant suit, the evidence which plaintiff seeks to introduce is merely cumulative. It would have been available to plaintiff prior to the trial if plaintiff had merely gone to Dr. Epstein for examination earlier. The evidence is of the same character as that already touched upon by other experts in the same field of medicine, it does not purport to show any change in plaintiff's condition which has occurred since the appeal was perfected, and there is no showing that there have been any unusual or unexpected developments which make it necessary in the interest of justice for the case to be remanded. As stated in Johnson v. Brown Paper Mill Co., La. App. 2 Cir., 35 So.2d 774:
"Appellate courts have the right and duty to remand cases for additional testimony. However, the occasions on which this is done are normally ones where there is newly discovered evidence or there have been unusual and unexpected developments. Where a case has been thoroughly tried and lengthy evidence adduced from numerous witnesses as was done in the case before us, it would not be proper for the case to be remanded for the taking of testimony which would be essentially, cumulative to that adduced by plaintiff on the trial of the case." (35 So.2d 775, Emphasis added).
Under the circumstances presented here, we are convinced that plaintiff is not entitled to have the case remanded. The motion to remand, therefore, will be denied.
For the reasons herein set out, the judgment appealed from is affirmed, and the motion to remand which has been filed by plaintiff is denied. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.