316 So.2d 433 (1975)
Peter ANDRUS, Plaintiff-Appellant,
v.
RIMMER & GARRETT, INC., et al., Defendants-Appellees.
No. 5094.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
*434 Felix A. DeJean, III, Opelousas, for plaintiff-appellant.
Dubuisson, Brinkhaus, Guglielmo & Dauzat by Jimmy L. Dauzat, Opelousas, for defendants-appellees.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
Plaintiff, Peter Andrus, appeals from a judgment dismissing his claim against his employer, Rimmer & Garrett, Inc., and the latter's insurer, Travelers Insurance Company, for total and permanent workmen's compensation benefits.
Andrus was injured on October 28, 1971, while working as a construction laborer in St. Landry Parish. On said date plaintiff was carrying a large wooden "form" up a hill, accompanied by several other workers, when he slipped and fell into a hole, immediately experiencing severe pain in his lower back.
*435 The following morning plaintiff was examined by Dr. George Bourgeois, an Opelousas general practitioner, who admitted the plaintiff to a local hospital with complaints of back and head pains. Doctor Bourgeois' initial diagnosis was a possible lumbar strain. Plaintiff was hospitalized for observation and treatment until November 5, during which time he was seen by two Opelousas orthopedic surgeons, Dr. Frederick L. Mayer, and Dr. Ladislas Lazaro, III. Both physicians could find no objective signs to support plaintiff's complaints of pain. Doctor Mayer, however, concluded, that giving plaintiff the benefit of the doubt, it was possible that Andrus had sustained a mild lumbosacral sprain, but opined that he should have been able to return to work in a short period of four to six weeks.
During the following several months plaintiff was treated by Doctor Bourgeois and seen a number of times by Doctor Mayer. On March 7, 1972, after consulting with Doctor Mayer, Doctor Bourgeois forwarded a medical report to the defendant insurer stating that the plaintiff could resume work on March 8, 1972. The defendant insurer, who had been paying the plaintiff workmen's compensation benefits since the date of the accident, discontinued same upon receipt of the report.
Subsequent thereto plaintiff consulted an attorney, who sent him to be examined by Dr. John Tassin, a Ville Platte general practitioner, on August 28, 1972. On that date Doctor Tassin admitted the plaintiff into a local hospital where he remained for a ten day period.
Thereafter plaintiff made demand, by letter dated September 7, 1972, upon the defendant insurer for resumption of workmen's compensation benefits on the basis that plaintiff had sustained a ruptured disc according to the opinion of Doctor Tassin. On September 13th the plaintiff was also examined by a Baton Rouge orthopedic surgeon, Dr. John M. Loupe. On the same date Doctor Loupe sent a letter to the defendant insurer indicating that plaintiff possibly could have a high lumbar disc, but that his neurological findings only indicated a back strain. On September 18, 1972, a copy of Doctor Tassin's report was also forwarded to the insurer by plaintiff's counsel.
This suit subsequently followed on September 25, 1972, seeking permanent and total disability benefits as a result of plaintiff sustained a "severe lumbosacral sprain and a probable lower lumbar disc rupture" in the accident.
On October 11, 1972, the plaintiff was sent by the defendant insurer to be examined by a Lafayette orthopedist, Dr. Fred C. Webre. Doctor Webre found no neurological or other objective findings to support a disc or any disability and concluded that from an objective sense he saw no reason why plaintiff could not return to manual labor.
Plaintiff subsequently filed a supplemental and amending petition contending he also suffered "traumatic hysteria, neurosis, and psyche of the mind" as a result of the accident.
Thereafter plaintiff was sent by his attorney to Doctor William P. Cloyd, a Lafayette psychiatrist, who examined the plaintiff on March 29, and April 24, 1973. Doctor Cloyd concluded essentially that plaintiff was disabled due to emotional illness caused by the accident.
On July 23, 1973, defendant insurer had the plaintiff examined by a Lake Charles psychiatrist, Dr. Gilles R. Morin. Doctor Morin, on the other hand, strongly concluded plaintiff was a malingerer, trying to feign his condition.
After trial, which was held on October 24, 1973, judgment was rendered in favor of the defendants, dismissing plaintiff's suit at his costs. This appeal followed.
No issue is made on appeal as to plaintiff being disabled as a result of the lumbosacral sprain, ruptured disc, etc. The *436 trial judge evidently concluded such was not the case and we find the evidence in this regard preponderating to the contrary.
Plaintiff-appellant's only specification of error is failure on the part of the trial court to find that plaintiff was totally disabled due to psychological overlay caused by his injury.
Where a claimant seeks workmen's compensation for neurotic disability, traumatic neurosis, et seq., such condition must be proven, as in any other disabling injury, by a preponderance of the evidence. Such condition must not only be shown to exist but also that it was causally connected with the work related accident. Thomas v. St. Patrick's Hospital, 276 So.2d 749 (La.App. 3rd Cir. 1973); Muse v. Sentry Insurance Company, 269 So.2d 609 (La. App. 3rd Cir. 1972).
Our jurisprudence has further indicated that in such cases the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such a condition and the possibility of the symptoms being easily feigned. The evidence in cases of this nature should be scrutinized carefully and every precaution taken to protect employers and insurers against unjustified claims because of alleged mental affliction. Messex v. Georgia-Pacific Corporation, 293 So.2d 615 (La.App. 3rd Cir. 1974); George v. Lafayette Well Service, Inc., 249 So.2d 212 (La.App. 3rd Cir. 1971); Boutte v. Mud Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir. 1970); Jackson v. International Paper Co., 163 So.2d 362 (La.App. 3rd Cir. 1964).
Any claim based on traumatic neurosis or psychological overlay must be substantiated by competent psychiatric opinion. Thomas v. St. Patrick's Hospital, supra; Muse v. Sentry Insurance Company, supra. As aforementioned, plaintiff was examined by two psychiatrists, Dr. William P. Cloyd and Dr. Gilles R. Morin.
Doctor Cloyd indicated that during his clinical examination plaintiff manifested symptoms including the following: He could not remember what year his accident occurred or even the day, month, nor year the examination was taking place; he had complaints of loss of memory, seizures, hallucinations, blackouts, in addition to pain in the lower back, head, and legs; he appeared pre-occupied, had trouble following questions and keeping track of what was going on around him. The doctor concluded plaintiff was unable to function, care for himself, or pursue any type of work, due to an emotional illness of a moderately severe degree, which he termed a hysterical psychotic reaction or traumatic neurosis. He further concluded that the condition resulted directly from the accident.
Doctor Morin, on the other hand, concluded, without doubt, that plaintiff was a "clear-cut", "classic", "textbook", case of a malingerer. He stated that throughout the examination he felt plaintiff was deliberately trying to confuse the picture for secondary gain, was extremely uncooperative, and exaggerated his symptomology to a considerable degree. The doctor opined that in his mind there was no question but that plaintiff was not suffering from traumatic neurosis or conversion reaction and that his "condition" could not have been caused by the accident. In this regard the doctor gave the following testimony:
"A. . . . In all of the years that I have interviewed people, and I have interviewed them for all kinds of reasonsfor example, the courts will refer people, and it is to their disadvantage, you know, tooand yet, you don't get this kind of thing. This was so much that it had to be, as far as I am concerned, put on. It had to be malingering.
Q. Had you ever seen a case where there was this gross amount of exaggeration by a person ?

*437 A. No, sir. No, sir. This is the thing, you know. Sometimes when there is a certain amount of exaggeration, well then, you kind of feel its difficult to make up your mind, but this was soit was just too much. It was unbelieveable. I've never seen anything like it.
. . . . . .
Q. . . . So this is the first malingerer that you have ever seen in your entire practice as a psychiatrist?
A. This is the one where I feel real comfortable, you know. You always hate toat least, I do. I don't like to say, well, this guy is a malingerer. Its kind of a nasty thing to say about a person. And I have suspected many, many, many of them, but I've always hesitated, but this one I don't feel that I can hesitate, because its too clear-cut."
The other physicians who examined plaintiff throughout the period also noted emotional factors involved in plaintiff's complaints of back pain. Notably, however, the extreme symptoms manifested by the plaintiff to Doctor Cloyd and Doctor Morin were not present upon examination by these doctors. In this regard Doctor Mayer characterized most of plaintiff's complaints and responses as over-exaggeration. Doctor Lazaro indicated that plaintiff's complaints were inconsistent and illogical with what symptoms plaintiff manifested, and stated that possibly plaintiff could simply be a malingerer. Doctor Webre felt that plaintiff was exaggerating his complaints and concluded that he simply could not believe everything plaintiff complained of. Important, however, is the fact that, other than Doctor Cloyd, only one of the treating or examining physicians, Doctor Tassin, concluded that the psychological overlay was associated with the accident.
It is evident that the trial judge, in concluding that plaintiff failed to prove that he was disabled due to psychological overlay caused by his injury, relied heavily on the testimony of Doctor Morin and failed to accept Doctor Cloyd's diagnosis. This conclusion is supported, as a whole, by the other medical testimony. In addition, he apparently disregarded plaintiff's testimony as being self serving.
The evaluation of the credibility of witnesses is peculiarly within the trial judge's domain. In addition, the amount of weight placed by the trial judge on expert testimony, and the findings of fact in this regard, are entitled to great weight on appeal. We cannot say the trial judge erred in this respect. See George v. Lafayette Well Service, Inc., supra; Santos v. Hunt Lumber Company, 179 So.2d 493 (La.App. 3rd Cir. 1965).
No issue is made on appeal as to plaintiff being disabled as a result of the lumbosacral sprain, ruptured disc, etc. The trial judge evidently concluded that he was not and we do not find the evidence in this regard preponderating to the contrary.
Affirmed.