326 So.2d 914 (1976)
Sidney GUILLORY, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 5346.
Court of Appeal of Louisiana, Third Circuit.
February 18, 1976.
Rehearing Denied March 11, 1976.
Writ Refused April 30, 1976.
*915 Don L. Broussard, Lafayette, for defendant-appellant.
Pucheu & Pucheu by Jacque B. Pucheu, Sr., Eunice, for plaintiff-appellee.
Before MILLER, WATSON and CUTRER, JJ.
CUTRER, Judge.
This workmen's compensation suit was filed by the plaintiff, Sidney Guillory, against Travelers Insurance Company, who is the workmen's compensation insurer of the plaintiff's employer, L.R.M. Company, Inc. Prior to the trial on the merits it was stipulated that the only issues before the court were whether the plaintiff was disabled and the extent of his disability. Judgment was rendered in favor of the plaintiff finding him entitled to compensation for total and permanent disability. Defendant has appealed from that judgment. We affirm.
The accident which resulted in the present litigation occurred on February 1, 1974. Plaintiff, while working as a laborer for his employer, was in the process of unloading railroad rails when one of the rails fell on his right hand. The accident took place in West Lake, Louisiana, and plaintiff went to Lake Charles the day of the accident to have the hand examined. His employer was notified of the accident. Compensation was paid by the insurer from February 1, to May 16, 1974. The termination of payments on that latter date was made pursuant to a report to the insurer from Dr. William L. Meuleman, who examined plaintiff on May 1, and determined, according to a letter from the insurer to plaintiff's attorney, that the plaintiff was able to return to work. Suit was filed on June 5, 1974, and payments were resumed by the insurer July 22. This second series of payments was paid until February 22, 1975. The trial was held on May 21, and judgment was rendered on July 10, in favor of plaintiff, awarding him compensation in the amount of $65.00 per week beginning February 1, 1975, and continuing for the duration of his disability not to exceed 500 weeks, plus medical payments up to the sum of $12,500.00, subject to a credit for any compensation or medical payments already made.
Defendant alleges two errors on the part of the trial court: that the court erroneously found that plaintiff had sustained the burden of proving his total and permanent disability, and that the court erroneously relied on the testimony of physicians who testified with regard to matters outside the field of their expertise. The basis for defendant's contentions of error on the part of the trial court come from three prior cases cited and discussed in brief by defendant. Those cases are Jackson v. *916 International Paper Company, 163 So.2d 362 (La.App.3rd Cir. 1964); Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App.3rd Cir. 1970), and Straughter v. Cesco, Inc., 262 So.2d 126 (La.App.1st Cir. 1972).
In Jackson, plaintiff sustained an injury to his back while employed by defendant as a laborer at defendant's sawmill. Plaintiff alleged disability as a result of post traumatic neurosis. In affirming the trial court's rejection of plaintiff's demands, this court noted the rule that when compensation claims are predicated upon traumatic neurosis or conversion reaction the court must proceed with utmost caution and exercise extreme care in view of the nebulous characteristics of such condition. The evidence presented at trial indicated a disagreement among the medical experts as to whether the plaintiff was disabled because of the traumatic neurosis. Most had agreed that the plaintiff was exaggerating his symptoms and attempting to mislead the examining physicians. Taking this factor into consideration the trial judge's dismissal of plaintiff's action was affirmed by this court.
In Boutte, plaintiff was injured when involved in a head-on collision while in the course and scope of his employment. One of the issues raised on appeal was plaintiff's contention that he should be found disabled as a result of traumatic neurosis. The basis for this claim was plaintiff's continued complaints of chest pains when his physician could not find the reason for these complaints. The physician suggested that plaintiff see a psychiatrist. Plaintiff subsequently did see a psychiatrist for examination, which was conducted during a single one-hour session. The psychiatrist concluded that the plaintiff was suffering from traumatic neurosis. In his written reasons for judgment the trial judge thoroughly considered this issue and concluded that traumatic neurosis was not proved. The trial judge stated that the examination by the psychiatrist was "simply too short to be used for such conclusive diagnosis." This court stated the general rule with regard to the nebulous character of traumatic neurosis and the need for the courts to proceed with utmost caution in scrutinizing the evidence presented in support of the claim. The trial judge's finding was affirmed.
In Straughter, the sole issue before the court was that of continuing disability of a workmen's compensation claimant. Plaintiff alleged that his disability was the result of conversion hysteria. The trial judge's judgment awarding plaintiff benefits for total and permanent disability was reversed by the Court of Appeal. Only one doctor was of the opinion that the plaintiff was still disabled at the time of the trial and it was his opinion that the continuing disability was solely the result of conversion hysteria. The court concluded that the testimony of that one doctor, standing alone except for the support of lay evidence, was insufficient to support a claim for disability predicated upon conversion hysteria.
Defendant argues that the above cited cases indicate that in cases involving disability based on conversion hysteria or traumatic neurosis, "utmost caution" must be exercised when a psychiatrist has examined the plaintiff and found him to be suffering from conversion hysteria. Since the plaintiff was never examined by a psychiatrist, and since those concluding that plaintiff is disabled due to conversion hysteria are medical experts lacking any training in psychiatry, defendant argues that plaintiff has failed to meet the burden of proving his disability. This argument is without merit.
The conclusion that plaintiff was disabled at the time of the trial is a factual conclusion based on the evidence presented to the trial judge. In order to reverse the judgment in favor of plaintiff we must find manifest error in the conclusions reached by the trial judge. We find that *917 the evidence produced in this case adequately supports the factual conclusion that plaintiff was still disabled at the time of the trial.
The deposition of Dr. Sylvan J. Manuel, plaintiff's family physician and a general practitioner in Eunice, indicated that he first saw the plaintiff in connection with the injury to his right hand on February 5, 1974, five days after the accident. Plaintiff related the accident to him and Dr. Manuel's examination of the hand revealed bruises of the whole right hand and wrist. Dr. Manuel gave plaintiff medication to relieve the pain and swelling. Treatment of the hand injury by Dr. Manuel had continued on a regular weekly or biweekly basis from that date up to the day before the taking of the deposition, May 15, 1975. Dr. Manuel diagnosed the plaintiff's problem as conversion hysteria, "when the mind thinks you're hurt and you're really not hurt and its a mental thing." Plaintiff continued to suffer from pain and swelling of his right hand, and the hand had a tendency to sweat, which Dr. Manuel stated was typical in the case of conversion hysteria. Dr. Manuel concluded that plaintiff was suffering a 15% Disability of the body as a result of the injury and that with the hand in its present condition plaintiff could not return to work. First, he would require psychiatric care and rehabilitation.
Dr. Manuel referred the plaintiff to Dr. Darrell L. Henderson, a plastic and reconstruction surgeon in Lafayette. The deposition of Dr. Henderson indicated that he first saw plaintiff on June 17, 1974. He stated that plaintiff was not using his hand at all when he first examined him, and the right hand was perspiring a good bit. Close examination of plaintiff's hand revealed that the inability to use the hand was not completely within the hand. When told to move the hand, plaintiff was unable to comply. But by working with him, Dr. Henderson stated that plaintiff could begin to make a fist. The inability of plaintiff to readily use his right hand was caused, according to Dr. Henderson, by an abnormal muscle pattern in which the plaintiff was contracting both the flexor and extensor tendons of the forearm at the same time when he attempted to move his fingers. Plaintiff had no grasp or pinch of the right hand, and muscular re-education was necessary. Dr. Henderson, like Dr. Manuel, concluded that plaintiff was suffering from an overlying conversion hysteria which was greatly increasing his amount of functional disability of his hand and was preventing him from working at his ordinary job. He related this conversion hysteria to the injury sustained on February 1, 1974, because he could find no evidence that he had suffered this type of problem prior to that accident. Plaintiff attended physical therapy treatment sessions at the Physical Therapy Clinic of Eunice, where he underwent ultrasound and wax treatments, as well as performing prescribed exercises designed to re-educate his muscles. Dr. Henderson stated that he wrote the insurer on February 17, 1975, of his intentions to discharge plaintiff from further medical treatment in hopes that he would return to work and overcome his disability by working with his hand on the job. However, he last saw plaintiff on April 21, 1975, and plaintiff had made no improvement. Any attempt to return to work had been futile. He concluded that plaintiff had a 10 to 15 percent permanent-partial disability of the right hand.
The deposition of Dr. William L. Meuleman, an orthopedic surgeon in Lafayette, was taken and introduced into evidence. Dr. Meuleman examined the plaintiff at the request of defendant. This examination took place on May 1, 1974, and lasted for approximately fifteen to twenty minutes. He stated that plaintiff was complaining of diffused pain and numbness in his right hand, and when requested to make a fist, he was unable to do so. Examination of the hand revealed no physical injury. Dr. Meuleman ruled out conversion *918 hysteria because of the lack of sweating or maceration at the time of the examination.
Defendant relies heavily both at the trial level and before this court on the testimony of Dr. Meuleman. His conclusion, unlike that of Drs. Manuel and Henderson, is that the plaintiff was not suffering from conversion hysteria. We note, however, that he examined the plaintiff only one time and this examination lasted only fifteen or twenty minutes. In contrast, both Drs. Manuel and Henderson examined and treated plaintiff over a period of months. Dr. Manuel saw plaintiff on a regular weekly and biweekly basis from February 5, 1974 through May 15, 1975. Dr. Henderson saw plaintiff regularly from June 17, 1974 through April 21, 1975. It is apparent from the record and the judgment rendered by the trial judge that he relied on the testimony of Drs. Manuel and Henderson, who concluded that plaintiff was disabled as a result of conversion hysteria, and disregarded the conclusion of Dr. Meuleman, who reached an opposite conclusion, but who had seen plaintiff for only a brief period of time on only one occasion. We find no error on the part of the trial judge in the conclusion he reached in this case.
Defendant has alleged on appeal that the trial judge committed error in permitting the introduction of the testimony of Drs. Manuel and Henderson with relation to their diagnosis of conversion hysteria. We find this contention to be without merit. Both doctors stated in their depositions that the diagnosis of conversion hysteria is within the competency of medical doctors. This is opposed to the treatment of conversion hysteria, which is more within the field of expertise of the psychiatrist according to their testimony. It should be noted that even the defendant's expert, Dr. Meuleman, stated that almost any physician could make a diagnosis of conversion hysteria. We conclude that no error was committed by allowing the introduction of the experts' testimony as to the diagnosis of conversion hysteria.
For the reasons assigned, the judgment of the trial court is affirmed at defendant-appellant's costs.

Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
I dissent from the majority's affirmance of a workmen's compensation award for total and permanent disability resulting from conversion hysteria because there is no psychiatric testimony to support the diagnosis. In Carter v. Avondale Shipyards, Inc., 308 So.2d 472 (La.App. 4 Cir. 1975), the court reiterated the rule that a claim of psychiatric disability must be viewed with extraordinary care. This court stated in Andrus v. Rimmer & Garrett, Inc., 316 So.2d 433 (La.App. 3 Cir. 1975):
"Any claim based on traumatic neurosis or psychological overlay must be substantiated by competent psychiatric opinion." 316 So.2d 436
Dr. Sylvan J. Manuel, plaintiff's family and treating physician, testified in deposition that plaintiff Guillory is totally unable to do manual labor:
". . . strickly because of the conversional [sic] hysteria." (TR. 21)
Dr. Darrell L. Henderson, plaintiff's other treating physician, said in his deposition:
"It is my strong recommendation that psychiatric consultation be obtained for a more definitive diagnosis as to the possibility of a conversion hysteria . . ." (TR. 53) *919 Dr. Henderson thought plaintiff's difficulty resulted from conversion hysteria rather than malingering but:
". . . this should be decided by an expert in the field such as a psychiatrist." (TR. 60)
Both treating doctors agree that plaintiff's difficulties should properly by diagnosed and treated by a psychiatrist.
I cannot agree to affirm the trial court judgment in the absence of psychiatric testimony. A remand for the purpose of obtaining psychiatric testimony may be the best disposition.

I respectfully dissent.