GAUDIN, Judge.
Donald Lee Thomas instituted this proceeding under the Louisiana Workmen’s Compensation Act, seeking total and permanent disability benefits from his employer, Pepsi Cola General Bottlers, Inc.
Following trial, Mr. Thomas was awarded disability benefits for an additional 150 weeks; also, his employer was ordered to pay “all medical bills” during the disability period.
From this judgment, both parties appealed.
Mr. Thomas contends: (1) that he should receive total and permanent benefits; and (2) that Pepsi Cola should have been required to pay legal interest on the past due and unpaid compensation.
The employer, on the other hand, feels that the trial judge erred in: (1) finding that the injury was work-related; (2) finding that Mr. Thomas was entitled to benefits after November 17, 1977; (3) finding that there was any disability at the time of trial; and (4) awarding medical expenses during the 150 weeks of disability.
Mr. Thomas, then 30 years of age, was employed as a laborer and his primary job was loading cases of soft drinks onto trucks. He was hurt, he said, on September 5, 1975, and he sought medical treatment five days later.
He testified:
“This big truck, I raised the door up and it came back down and I caught it. That is when my back first started hurting.”
There were no witnesses to this accident, and Mr. Thomas’ foreman said that the incident was not reported to him.
Mr. Thomas, however, did tell a fellow worker that he had hurt his back, and the medical evidence clearly indicates that Mr. Thomas had sustained a severe low back strain on or about September 5, 1975.
From these circumstances, the trial judge concluded that Mr. Thomas had in fact been injured within the scope of his employment, and we will not disturb this finding.
Mr. Thomas was treated for his low back problems through November 10, 1975, at which time he was told by Dr. Randall Williams, the treating orthopedist, to return to work. Pepsi Cola then terminated compensation benefits, having paid $716.45 plus $801.99 in medical expenses.
*285 Dr. Williams, the only physician to testify at the trial, although various medical reports were stipulated into evidence, first saw Mr. Thomas on October 13, 1975, he noticed a “pelvic dipping”, i. e., the pelvis was tilted, and there was muscle spasm. Also, there was narrowing of the disc space between the 5th vertebra and the sacrum.
On October 27, 1975, Dr. Williams felt that Mr. Thomas required physical therapy, and Dr. Willard Holmes was recommended.
By November 10, Mr. Thomas had a full range of motion and he was able to completely reverse the lordosis. Dr. Williams advised his patient to return to work.
However, Mr. Thomas did not resume his employment. He returned to Dr. Williams on February 4, 1976, complaining of recurring low back pain. Dr. Williams found spasm and advised Mr. Thomas to resume physical therapy.
Dr. Williams saw Mr. Thomas on six occasions in 1976, and finally on February 27, 1977. On the last visit, Mr. Thomas still complained of pain, but the orthopedic and neurosurgical examinations were “completely negative” except for the previously mentioned disc narrowing. Dr. Williams said that Mr. Thomas cannot do heavy lifting.
It is possible, Dr. Williams stated, that the disc problem is related to the sued-on accident, but it could be the result of a past injury. Actually, Mr. Thomas had been involved in two prior accidents, including one in which his back “locked”.
Dr. Williams further said that it is possible that the problems related to the September 5,1975 injury could have completely subsided and could have been resolved by November 10, 1975.
Dr. J. Carlos Pisarello, a neurosurgeon, examined Mr. Thomas in March, June and September of 1976.
Dr. Pisarello felt that Mr. Thomas may have a prolapsed intervertebral disc, and he suggested myelography, which was never done.
Dr. J. Kenneth Saer, an orthopedist, saw Mr. Thomas on February 8, 1977.
From his report:
“Patient has subjective symptoms of low back pain which are suggestive of degenerative disc disease in the lumbar area. There are no objective findings to definitely substantiate any specific diagnosis. There are no signs of interbertebral disc herniation or extrusion.
It is my impression that this patient may or may not have some low back discomfort. From a practical point of view I do not think that any specific treatment is advisable other than the usual postural instructions. I think this patient is capable of working if he is desirous of doing so.”
Also in the record are reports prepared by Dr. Morris Fisher, the initial treating physician, and several physical therapy reports.
From this maze of inconclusive medical evidence, the trial judge made his determinations. Mr. Thomas argues that the trial judge should have found total and permanent disability, while the employer feels that the trial judge should have found no disability beyond November 10, 1975. We acknowledge that indeed there is medical evidence to at least partially justify both opinions.
However, the trial court awarded disability for an additional 150 weeks; and, while such a judgment cannot perhaps be justified by exact mathematical or statutory standards, we must note that medical science in general and the testimony of the various physicians in the instant case are no more precise.
The trier of fact is given considerable discretion and we cannot find manifest error in the 150-week disability award.
We do find fault with two minor portions of the judgment. Interest on the past due payments should have been included in the decree. See Ray v. Superior Iron Works and Supply Co., Inc., La.App., 284 So.2d 140, and Straughter v. Cresco, Inc., La.App., 262 So.2d 126.
Also, the trial judge erred in awarding “all medical bills”. Only those medical *286 expenses related to the September 5, 1975 accident should be paid by the employer during the 150-week disability period.
Accordingly, we affirm the judgment appealed from with regard to the term of disability; and we amend said judgment to include (1) legal interest on all compensation payments from the due date, until paid, and (2) the requirement that medical expenses to be paid by the employer must be connected to the accident of September 5, 1975.