407 So.2d 1245 (1981)
Paul A. BOURGEOIS
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY.
No. 12605.
Court of Appeal of Louisiana, Fourth Circuit.
November 12, 1981.
Rehearing Denied January 21, 1982.
*1246 Uhalt & Reck, Gothard J. Reck, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Steward E. Niles, Jr., New Orleans, for defendant-appellant.
Before GULOTTA, GARRISON and BARRY, JJ.
GULOTTA, Judge.
Defendant, appealing from a lump sum compensation and medical expense award, contends that plaintiff failed to prove his lower back disability resulted from a job-related injury or work activity, and that plaintiff's claim for medical expenses has prescribed. Alternatively, South Central Bell claims that any award should be offset by social security benefits received by plaintiff under the provisions of LSA-R.S. 23:1225.

BACKGROUND
The fifty-seven year old plaintiff had worked as a commercial telephone installer for defendant for twenty-eight years. According to plaintiff, his job required pulling cable and moving heavy furniture. Paul Bourgeois testified that in the middle of February, 1979, while installing telephone service, he felt "something snap" in his back as he stood on a ladder and strenuously pulled cable through a ceiling. According to plaintiff, he told his supervisor and a co-worker on the same day that he had hurt his back. Bourgeois continued working until March 3, 1979.
Plaintiff then consulted an orthopedic surgeon and ultimately underwent two operations resulting in disc removal and a spinal fusion. According to plaintiff, other than the incident in mid-February, he had encountered no problem with his back during his twenty-eight years work for the telephone company except for a period of back strain in September, 1978, which had resulted from an episode of shoveling mud at his home. Plaintiff testified that he was still in pain at the time of trial and has not worked from March 3, 1979 until the date of trial.
Plaintiff's testimony regarding statements made by him to co-workers of the unwitnessed episode of pain on the job in February, 1979 was disputed by these workers. According to these witnesses, plaintiff did not relate to them that he had injured his back while pulling the cable in early 1979. They had observed plaintiff's difficulty in arising from a seated position with complaints of leg pain repeatedly over a period of several years prior to 1979.[1]
*1247 In addition to this conflicting lay testimony, the trial judge had the benefit of the expert testimony of three physicians who had treated plaintiff. Dr. Ralph Gessner, an orthopedic surgeon, first saw plaintiff on September 6, 1978, when he complained of low-back pain related to the shoveling incident in his back yard. At that time plaintiff had no previous history of back problems. An X-ray at that time revealed plaintiff had a moderate degree of degenerative osteoarthritis and Dr. Gessner was of the opinion that he had sustained a strain to the lumbar spine that had aggravated the pre-existing condition. This physician prescribed muscle relaxants, analgesics, and rest before allowing plaintiff to return to work on September 18, 1978.
Dr. Gessner saw plaintiff again on March 6, 1979 when he complained of severe back pain radiating to the left leg. This physician specifically asked plaintiff whether he had sustained an injury and plaintiff indicated he had not. Examination revealed moderate spasm in the low back with tenderness on the left side. X-rays again showed degenerative changes and Dr. Gessner prescribed relaxants and conservative treatment. On March 22, 1979, as plaintiff continued to exhibit marked discomfort, Gessner suggested hospitalization and pelvic traction, but plaintiff declined this treatment. Although Dr. Gessner was of the opinion that a work-related injury while pulling cable could have caused plaintiff's problem, he had no information from plaintiff's history to indicate any such traumatic occurrence or accident. In his opinion, plaintiff has exhibited "spontaneous" onset of symptoms. Dr. Gessner further testified that an individual engaged in labor has a more accelerated or aggressive course of osteoarthritis.
Dr. Robert Applebaum, a neuro-surgeon, first examined plaintiff on April 11, 1979 on complaints of pain in the lower back and left leg. Plaintiff dated his problem to approximately one and one-half months previously when he had noticed a gradual onset of pain in his lower back. According to Dr. Applebaum, plaintiff denied any particular injury. A lumbo-myelogram performed on April 18, 1979 showed a predominant defect at the L4-5 interspace corroborating this physician's diagnosis of a herniated disc on the left side. Dr. Applebaum performed a lumbar laminectomy on April 19, 1979 and removed a free disc fragment compressing on the nerve root. According to this physician, the "trigger mechanism" setting off this rupture would have occurred sometime very close to the onset of plaintiff's discomfort and pain. Applebaum testified that daily activities divorced from any work could supply sufficient stress to herniate a disc, but he acknowledged that the act of a man with degenerative arthritis in his lower back engaging in manual labor and pulling cable overhead could cause a herniated disc. Based on the history he had received from plaintiff, however, Dr. Applebaum was of the opinion that his herniated lumbar disc was not related to his employment.
Dr. Russell Grunsten, an orthopedic surgeon, saw plaintiff on August 21, 1979 on referral from Dr. Applebaum.[2] Plaintiff related to this physician that pulling on cable in his work had seemed to aggravate pain in the left lower extremity and that an episode of pulling cable in January, 1979 had been the "precipitating episode." Dr. Grunsten's examination indicated nerve root damage at the L5 level and he subsequently performed a fusion operation after Dr. Applebaum removed a second disc fragment.[3] Dr. Grunsten was of the opinion that a 57-year old person engaged in physical activities involving pulling cable at the limit of his strength and standing on a ladder would be prone to sustain a ruptured disc. Although Dr. Grunsten said it was possible that plaintiff could have had some disc damage from the shoveling incident in his yard in September, 1978, he was of the *1248 opinion that pulling on the cable, or "whatever occurred in January or February" was the more likely cause of the rupture.

JOB-RELATED INJURY
It is undisputed that plaintiff has suffered a herniated disc at the L4-5 level, which has resulted in two operations for removal of disc fragments and a spinal fusion. At issue, however, is whether plaintiff's back problem was job-related.
Having considered the conflicting testimony, both lay and expert, in the record before us, we cannot say that the trial judge's finding that plaintiff suffered a job-related accident resulting in impairment of his back is clearly wrong or manifestly erroneous. The trial judge simply chose to believe plaintiff's version of the incident and the testimony of Dr. Grunsten, rather than the testimony of plaintiff's co-workers and the opinions of the other physicians. As we noted in Gurry v. Allied Metals, Inc., 379 So.2d 871 (La.App. 4th Cir. 1980) and Newell v. New Orleans Public Service, Inc., 402 So.2d 246 (La.App. 4th Cir. 1981), the testimony of an employee may establish a work-related disabling accident where such testimony is corroborated by other credible evidence. Even though the reviewing court may be of the opinion that other evaluations and inferences are as reasonable, we cannot disturb the trial court's reasonable evaluations of credibility and reasonable inferences of fact. Crump v. Hartford Acc. & Indem. Co., 367 So.2d 300 (La.1979). Under the circumstances, we conclude the record supports the trial judge's conclusion that the event triggering the herniation of plaintiff's lumbar disc was job-related.

SOCIAL SECURITY OFFSET
We reject defendant's contention that plaintiff's compensation award is subject to the Social Security "offset" provisions of LSA-R.S. 23:1225, which reads:
"§ 1225. Reductions when federal benefits payable
The benefits provided for in this Subpart B for injuries producing permanent total disability shall be reduced when anyone is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. Section 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and workmen's compensation benefits would otherwise cause or result in a reduction of the benefits payable under the federal old age, survivors, and disability insurance act pursuant to 42 U.S.C. Section 424a and in no event will the benefits provided in this Subpart together with those provided under the federal law exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. Section 424a.
Added by Acts 1978, No. 750, § 1."
It is clear that the reduction provided for in this statute pertains only to "benefits provided for in this Subpart B for injuries producing permanent total disability...." (emphasis ours). The award in our case was not for permanent total disability. The trial court's judgment provides, in pertinent part:
"3The Court finds as a conclusion of fact that the plaintiff was partially disabled for a period not to exceed one hundred (100) weeks;
4The Court finds as a conclusion of law that the plaintiff is entitled to benefits as provided for total/temporary disability for a period not to exceed one hundred (100) weeks."
It is clear from the trial judge's conclusions that plaintiff was not found to be permanently and totally disabled. The social security offset provisions of LSA-R.S. 23:1225, therefore, simply do not apply to our case.

NATURE OF AWARD
LSA-R.S. 23:1221 provides for a schedule of compensation benefits for various injuries including those producing "temporary total" disability [LSA-R.S. 23:1221(1)], *1249 "permanent total" disability [LSA-R.S. 23:1221(2)], "partial" disability [LSA-R.S. 23:1221(3)], and, the loss of various body members [LSA-R.S. 23:1221(4)]. LSA-R.S. 23:1221(4)(p) further provides:
"(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks."
Although he did not specifically articulate in his findings and decree or cite the statute by number, because an award was made for 100 weeks, we interpret the trial judge's findings to mean that plaintiff was entitled to compensation under LSA-R.S. 23:1221(4)(p) for the serious and permanent impairment of his back. As noted in Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3rd Cir. 1969), the basis of an award under this section is not disability; it is rather a limited award for a permanent residual of a work-injury that does not produce disability but will seriously hinder the employee for the rest of his life. In Ventress, an award under LSA-R.S. 23:1221(4)(p) was allowed a worker for a nondisabling residual back pain that resulted in a permanently weakened back. Similarly, in our case, plaintiff is entitled to benefits under this provision.
In making an award under LSA-R. S. 23:1221(4)(p), the trial court has much discretion in determining the weekly amount due for the 100 week period, subject to the statutory maximum of 662/3% of wages during 100 weeks. Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App. 2d Cir. 1980), writ denied, 385 So.2d 793 (La.1980). In fixing compensation for impairment of function, the award is not restricted to a medical percentage of disability. Ventress v. Danel-Ryder, Inc., supra.
In our case, the trial court's judgment did not fix a percentage of plaintiff's wages to be awarded, but merely rendered judgment "in an amount provided by the Louisiana Workmen's Compensation Laws, for a period not to exceed one hundred (100) weeks", which was to be paid in a lump sum. We sense the trial judge's clear intention in the judgment, however, that plaintiff be awarded the statutory maximum of 662/3% of his wages during the 100 week period. Moreover, the record supports such a conclusion. Although no medical expert quantified the percentage of plaintiff's back disability, it is clear that he has suffered a serious impairment. Under the circumstances, we cannot say that an award of 662/3% of his weekly wage for 100 weeks under LSA-R.S. 23:1221(4)(p) is unsupported by the record.
We find no statutory authority, however, for awarding plaintiff's compensation in a lump sum. See Lott v. Brennan's House of Printing, Inc., 359 So.2d 746 (La.App. 4th Cir. 1978); and, Sewell v. W. Horace Williams Co., 12 So.2d 33 (La.App. 1st Cir. 1943). Accordingly, we reverse and set aside the judgment insofar as it awards a lump sum plus interest and recast it to award plaintiff the sum of $230.00 per week,[4] for 100 weeks, plus legal interest on each payment from the date due, until paid.[5]

MEDICAL EXPENSES
We likewise reject defendant's contention that plaintiff's claim for medical expenses has prescribed under LSA-R.S. *1250 23:1209.[6] Defendant argues that plaintiff's petition contains no claim for medical expenses, that plaintiff offered no evidence of medical expense at trial and that no medical payments have been made to interrupt prescription.
Paragraphs IV, V, and VI of plaintiff's petition for compensation benefits specifically state the injury required extensive medical treatment and hospitalization expenses which defendant refused to pay. Moreover, the expert testimony clearly supports a conclusion that medical and hospital expenses were incurred. Under these circumstances, we cannot say plaintiff has failed to seek reimbursement for medical expenses. The claim was asserted in the timely filed petition. Plaintiff's claim for medical expenses, therefore, has not prescribed.
The trial court's judgment provided for medical payments as follows:
"This Court finds that the plaintiff is entitled to be re-imbursed all medical expenses related to and growing out of this accident from February 13, 1979, thru January 15, 1981."
In a "Motion to Amend Judgment as to Specific Amount of Medical Expenses Awarded Thereby", plaintiff averred that counsel were unable to stipulate as to the total amount of medical expenses and sought to complete the record concerning the specific medical expenses due. The trial judge dismissed this motion for amendment, but provided that the motion was "subject to be reopened subsequent to review by the court of appeals, if appropriate". Because we affirm the trial court's finding of a job-related injury and hold that the claim for medical expenses has not prescribed, and because the record is silent on the amount of medical expenses incurred, we are compelled to remand the matter to the trial court solely for the determination of the specific amount of medical expenses incurred by plaintiff as result of his compensable injury.

DECREE
Accordingly, we affirm that part of the judgment decreeing entitlement to benefits for one hundred (100) weeks and for reimbursement for medical expenses, but recast the judgment more specifically as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, PAUL A. BOURGEOIS, and against the defendant, SOUTH CENTRAL BELL TELEPHONE COMPANY, ordering defendant to pay plaintiff the sum of $230.00 per week for a period of one hundred (100) weeks, with legal interest on each payment from the date due until paid.
The matter is now remanded solely for a determination of the specific amount of medical expenses incurred. In all other respects the judgment is affirmed.
AFFIRMED AND REMANDED.
NOTES
[1] These witnesses were Warren R. Punkey, Sr., James Hedrick, Michael D. Haggerts, an installation manager, and Steven R. Comiskey, plaintiff's supervisor.
[2] Plaintiff experienced relief following his first operation in April, 1979, but began to experience pain again in July-August, 1979.
[3] The second disc fragment was not a new rupture, but rather an outgrowth of the earlier herniation.
[4] Plaintiff testified he was earning approximately $345.00 per week at the time of his injury. 662/3% of $345.00 is $230.00.
[5] A claimant is entitled to interest on past due compensation benefits. See Thomas v. Pepsi Cola Gen. Bottlers, Inc., 359 So.2d 283 (La.App. 4th Cir. 1978); Ray v. Superior Iron Works and Supply Co., Inc., 284 So.2d 140 (La.App. 3rd Cir. 1973); Straughter v. Cesco, Inc., 262 So.2d 126 (La.App. 1st Cir. 1972).
[6] LSA-R.S. 23:1209 reads as follows:

"§ 1209. Prescription
In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of partial disability this limitation shall not take effect until three years from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in ali such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident."