554 So.2d 736 (1989)
Freddie L. FOSTER, Appellant,
v.
MANVILLE FOREST PRODUCTS, INC., Appellee.
No. 20966-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1989.
Rehearings Denied January 18, 1990.
Writ Denied March 30, 1990.
*737 A.W. Block, Jr., West Monroe, for appellant.
C.A. Martin, III, Monroe, for appellee.
Before HALL, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff, Freddie L. Foster, appealed from the judgment of the trial court in favor of defendant, Manville Forest Products, Inc., finding that he was not permanently partially disabled as the result of a work-related injury in plaintiff's action for worker's compensation benefits. For the reasons stated herein, we reverse that portion of the trial court judgment finding that plaintiff was not permanently partially disabled and find that he was permanently partially disabled, and affirm the judgment insofar as it denied plaintiff statutory penalties and attorney's fees.
Issue Presented
The primary issue is whether the trial court erred in finding that plaintiff failed to carry his burden of proof for permanent partial disability.
Factual Context
The record shows that on October 27, 1979, plaintiff was employed as a double-back operator in the corrugator department of a paper mill belonging to Manville Forest Products, Inc. On that date, plaintiff sustained a crushing type injury to the fingers of his right hand when that hand came in contact with the machine he was operating. Plaintiff eventually underwent amputation of his right ring and little finger and experienced stiffening of the middle and index finger. Plaintiff is unable to touch his palm with his middle finger. While recuperating from his hand injury, plaintiff suffered from coronary disease and a stroke which rendered him physically unable to work since the date of the accident.
*738 On May 26, 1982, plaintiff filed this action for worker's compensation benefits naming as defendant, Manville Forest Products, Inc. Plaintiff alleged that as a result of the work-related injury he was totally and permanently disabled from doing any work for which he was qualified and would never be able to regain employment as a laborer. Plaintiff further alleged he was totally and permanently disabled due to a pre-existing heart condition in the form of arterial hypertension and coronary artery disease coupled by a stroke. Plaintiff alleged that he had been paid weekly worker's compensation benefits but the benefits were discontinued by the defendant in August, 1981. Simultaneously with the termination of benefits, plaintiff was requested to execute a compromise releasing defendant from all claims for compensation benefits. Subsequent to plaintiff's refusal to execute the compromise, defendant refused to reinstate benefits. Plaintiff alleged defendant's refusal to reinstate compensation benefits after his refusal of the settlement was arbitrary, capricious and without probable cause, thereby entitling him to an award of statutory penalties and attorney's fees.
Defendant filed a peremptory exception of prescription alleging plaintiff's action for total and permanent disability benefits had prescribed. The hearing on the exception was continued due to the bankruptcy proceedings of the defendant.
On May 15, 1984, plaintiff filed an amended petition alleging in the alternative that he had been permanently partially disabled as a result of the combined disabilities of his hand injury and heart disease. The amendment was filed following the release of the proceedings from the automatic stay granted in defendant's bankruptcy proceedings.
The trial court sustained defendant's exception of prescription as to both claims for permanent total disability and permanent partial disability. On appeal, this court affirmed the judgment of the trial court with respect to plaintiff's claim for total and permanent benefits but reversed that portion of the judgment finding that plaintiff's demands for permanent partial disability had prescribed. See Foster v. Manville Forest Products Corporation, 465 So.2d 920 (La.App. 2d Cir.1985).
Defendant later filed an amended answer wherein it alleged that on the date that plaintiff's worker's compensation benefits were terminated, plaintiff began receiving accident and sickness (A & S) benefits for the maximum period of 26 weeks and after that time plaintiff began receiving long-term disability (LTD) benefits. Defendant alleged that under the plan in effect at the time of the plaintiff's employment, A & S and LTD benefits were not payable if the accident, sickness, or disability was in any manner connected with a work-related accident or injury. Therefore, defendant alleged that if plaintiff was entitled to additional worker's compensation benefits, defendant was entitled to reimbursement of all benefits received by plaintiff under these benefit plans.
The evidence at trial established that plaintiff was 51 years old on the date of the accident and had worked for defendant (formerly known as Olinkraft) for approximately 23 years. He had a 12th grade education and except for a brief enlistment in the Army, had always been a manual laborer. During his employment with defendant, plaintiff had worked in several different positions. At the time of the accident, he was a double-back operator. Plaintiff testified that the double-back operator puts on the last sheet of paper to finish up the cardboard. The job entails the use of hand tools such as a straight bar, Crescent and Allen wrenches. The duties of the double-back operator varied depending upon what type of boxes he was running. There were different types of starch and paper which were used and the operator was required to make those changes if necessary. The corrugator machine was as large as a football field and there were approximately six stations on the machine. The double-back operator did not remain at one position as all the stations worked together as a team. The double-back operator was also required to clean up the machine. Although the operator had a stool to sit down at his station, *739 plaintiff testified most of the time was spent on his feet. The job entailed climbing, walking along a catwalk, squatting and stooping on occasion.
Plaintiff testified that on the date of the accident he was helping the single-facer operator splice a roll of paper and put it back underneath the roller portion of the machine where the hot wax was applied. His hand somehow became caught between the two rollers and was pulled into the machine.
Plaintiff testified that he is presently unable to work and has very little use of his right hand which is his dominant hand. Plaintiff is unable to garden or to use any gardening tools and is no longer able to do any repairs to his pickup truck. Plaintiff testified that the hand is painful.
Plaintiff received worker's compensation payments from October 28, 1979 through September 16, 1980 in the maximum amount of $148 a week. The evidence established that defendant kept plaintiff on worker's compensation benefits until that date as it was aware he was disabled by a heart condition and then changed him to A & S benefits immediately when the paperwork was completed so that plaintiff had no loss of benefits. Defendant terminated plaintiff's benefits on the basis of a medical report dated July 22, 1980, from Dr. Myron Bailey, plaintiff's treating physician for his hand. The report stated that plaintiff was released from his care and estimated plaintiff's permanent physical impairment due to his hand injury to be approximately 30%.
In changing plaintiff over to A & S and LTD benefits, defendant felt plaintiff could not return to work only because of his heart condition and would have tried to return plaintiff to work had he not developed this condition. Defendant considered the release of plaintiff from Dr. Bailey's care to be the equivalent of a release to return to work.
The A & S benefits were paid to plaintiff for the maximum period in the amount of $150 per week. After the exhaustion of these benefits, plaintiff was changed to the LTD plan which was based on a percentage of his gross salary. The A & S and LTD benefits were paid to plaintiff by defendant only in reference to his heart condition and were not intended as any type of compensation for his hand injury.
Defendant argued that the A & S and LTD benefits were not payable concurrently with worker's compensation benefits, based upon the language of the insurance plan. The plan specifically stated that any disability caused or contributed to by injury arising out of, or in the course of, any employment for wage or profit or disease covered, with respect to such employment, by workman's compensation law, occupational disease law or similar legislation, or any concurrent or subsequent disability occurring during the same period of disability was not covered. Thus, as defendant believed that plaintiff was released to return to work by Dr. Bailey with reference to his hand injury but could not resume his employment due to his heart condition, the defendant began payment of the A & S and LTD benefits for the plaintiff's heart condition.
Plaintiff's treating physician for his hand injury, Dr. Myron Bailey, testified by deposition. Dr. Bailey stated that he first saw plaintiff on the date of the injury and he had sustained a crushing type of injury to the fingers of his right hand. Plaintiff had multiple lacerations on all fingers with some burning on the skin of the hand. Despite surgical treatment, Dr. Bailey had to amputate plaintiff's ring finger on November 14, 1979 and amputate the small finger on June 12, 1980. On July 22, 1980, plaintiff's amputation stump was completely healed and Dr. Bailey estimated his permanent physical impairment as related to the hand as 30%. This was based on amputation of two fingers as well as limited motion of the long finger. Dr. Bailey had not seen plaintiff since that date.
Dr. Bailey withheld his opinion as to whether plaintiff could return to his employment stating he did not fully know what duties plaintiff's job entailed. Dr. Bailey stated plaintiff could go back to some type of work and had a 70% functional hand with limited grasping grip strength. His hand would allow him to *740 push objects but Dr. Bailey did not know how much finite work or how much grip strength was required by plaintiff's former employment. Dr. Bailey stated that plaintiff should be capable of gross movements but as this involved his dominant hand, there would definitely be some limitation of manual activities. However, plaintiff should be able to carry out light or moderate manual activities depending upon the nature of the activity. Dr. Bailey stated that dexterous movements would be impossible for plaintiff without five fingers. Dr. Bailey was of the opinion that plaintiff was partially disabled due to his hand.
Dr. David A. Hebert, plaintiff's treating physician for his heart condition, also testified by deposition. Dr. Hebert first saw plaintiff in 1978 and plaintiff was suffering from hypertension. Plaintiff was hospitalized in February 1980 with atrial fibrillation, which is an irregular heartbeat and hypertension. Dr. Hebert's diagnosis was coronary artery disease, arterial hypertension and atrial fibrillation. Plaintiff was again hospitalized in March 1980 with a stroke which affected plaintiff's left side. Plaintiff regained some strength in his left side but it never returned to normal. Dr. Hebert felt that with plaintiff's heart condition and injury to his right hand, plaintiff was totally permanently disabled.
Plaintiff was also evaluated by Dr. C.R. Hand. Dr. Hand concluded that plaintiff's overall physical impairment and loss of physical function to the whole hand was 30%. The relative value of the little finger to the whole hand was 5% and the ring finger was 10% but in Dr. Hand's opinion, plaintiff should be rated upward due to the loss of motion in the remaining fingers.
After reviewing the evidence, the trial court found that plaintiff failed to prove by a preponderance of the evidence that he was permanently partially disabled. The court noted that in order to determine if plaintiff was partially disabled, it had to depend upon the testimony of Dr. Bailey. However, the court found that the doctor never made any definite statement about whether or not plaintiff could do his usual job or a job of similar character. Dr. Bailey stated that plaintiff could return to work of some type but refused to state definitively whether plaintiff could return to his original or a similar job without having more information. The court stated that it had no definitive medical testimony as to whether plaintiff was disabled by his hand injury and likewise, there was no lay testimony to guide the court in determining precisely the plaintiff's job description, and what, if any, part of that job he could not perform.
The court found there was absolutely no evidence presented upon which it could base a credible finding as to the extent of the plaintiff's hand disability in relation to the work he had been performing or could have performed except for the non-related heart condition. The court stated it could not simply assume that a 30% disability of the hand automatically translated to a partial disability.
The court then considered whether plaintiff had proven entitlement to any recovery under scheduled losses and noted that under La.R.S. 23:1221(4)(c) the plaintiff would be entitled to 20 weeks each for the loss of his small finger and ring finger, but under sub-paragraph (e) he would be entitled to 30% of his compensable rate for 150 weeks due to the loss of 30% of his hand. Being entitled to the greater amount and since the minimum rate of compensation at the time of plaintiff's injury was $45 per week, the court found plaintiff would be entitled to $45 for 150 weeks for the loss of 30% of his hand. Against this amount, defendant would be entitled to a credit for the weekly compensation paid from the date of the injury until September 16, 1980. The court made no finding as to the issue of whether defendant was entitled to a credit for sums paid under the A & S and LTD benefit plans.
As the court found that plaintiff failed to prove his claim for partial disability, it held plaintiff was not entitled to statutory penalties and attorney's fees. Even if plaintiff was due a small amount of compensation under the scheduled loss provisions, plaintiff never claimed recovery under that section of the act and the court found that *741 statutory penalties and attorney's fees were not applicable.
Permanent Partial Disability
It is well-settled that the Louisiana Worker's Compensation Act as it existed at the time of plaintiff's injury is controlling. Hernandez v. F.W. Woolworth Company, 516 So.2d 139 (La.App. 4th Cir.1987), writ denied, 516 So.2d 361 (La.1987). At the time of plaintiff's injury in 1979, La.R.S. 23:1221(3) provided:
For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages ... during the period of disability ... not beyond a maximum of 450 weeks for such partial disability resulting from injury ...
The statutory definition is met and the claimant is entitled to benefits for partial disability if the preponderance of the evidence is that the claimant is unable to perform his previous job duties. A worker is partially disabled when he cannot perform the duties required by his former employment but can still do other work. The claimant's condition at the time of trial is the criterion to determine whether the disability is permanent or temporary, partial or total. In every case the totality of the evidence, medical and lay, must be examined by the court in making its determination of whether to grant a disability award. The claimant bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. Hernandez v. F.W. Woolworth Company, supra; Barry v. Western Electric Company, Inc., 485 So.2d 83 (La.App. 2d Cir.1986), writ denied, 487 So.2d 441 (La.1986); Latiolais v. Home Insurance Company, 454 So.2d 902 (La.App. 3d Cir.1984), writ denied, 460 So.2d 610 (La.1984); Ramsey v. Dragon Limited, 448 So.2d 745 (La.App. 4th Cir.1984), and LeBlanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir.1977), writ denied, 351 So.2d 174 (La.1977).
It is well-settled that when an injured employee qualifies for both a scheduled loss award and a permanent partial disability judgment, the employee may not recover compensation for both but is entitled to the more favorable of the two remedies. Jacks v. Banister Pipelines America, 418 So.2d 524 (La.1982).
Plaintiff argues that the trial court erred in finding that he had failed to carry his burden of proof for permanent partial disability where the evidence was clear and uncontradicted that plaintiff was an individual of limited education and work history and that he had suffered a 30% permanent disability to his right hand. After reviewing the record, we find that the trial court erred in holding that plaintiff failed to prove that he was permanently partially disabled.
The record established that plaintiff had a high school education and had been employed as a manual laborer for virtually all of his working life, including the 23 years that plaintiff was employed by the defendant. He has no other skills or any type of specialized vocational education. Plaintiff's testimony as to his job requirements as a double-back operator established that the job duties were rigorous. The work entailed the use of hand tools and required plaintiff to handle the rolls of paper and the application of starch in order to finish out the cardboard. Plaintiff testified that all the workers at the various stations on the corrugator machine worked together and plaintiff regularly helped out at the other stations on the machine. In fact, when the accident occurred, plaintiff was helping the single-facer operator splice in a roll of paper. Following the accident, plaintiff was severely limited in the use of his hand by the loss of two fingers and the impairment of his long and index finger. The medical evidence established that plaintiff *742 had limited grasping strength and could not perform jobs that required dexterity. Although Dr. Bailey would not render an opinion as to whether plaintiff could return to his previous employment without having more exact information as to his job duties, Dr. Bailey did state that plaintiff was partially disabled with an assigned 30% disability of his right hand. Dr. Bailey stated that plaintiff would definitely have some limitation of manual activities and that dexterous movements would be impossible without all five fingers.
After reviewing the evidence, we find it is clear that plaintiff was permanently partially disabled as a result of his hand injury under La.R.S. 23:1221(3). Under La.R.S. 23:1221(3), an employee is permanently partially disabled if he is unable to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience. The testimony of the plaintiff together with the medical evidence meets the plaintiff's burden of proof that he was unable to return to his previous employment following his hand injury. Following the accident, plaintiff was for all purposes a one-handed worker except for limited gross manual activities. Plaintiff is right-handed and would certainly not be able to perform dexterous movements without all of his fingers and to use the hand tools necessitated on the job. Plaintiff would also need the use of both hands in order to handle the rolls of paper and as well as to operate the other various stations on the corrugator machine.
It is clear that plaintiff would be unable to return to his former employment. Without the full use of both hands, plaintiff would be extremely limited in his employment opportunities as the result of his age, training and education and certainly could not safely perform his previous job duties. Although this case is somewhat complicated by the fact that plaintiff suffered from a heart condition which was also disabling and prevented plaintiff from returning to any type of employment, we find that plaintiff is permanently partially disabled solely as a result of his hand injury as he could not resume his former employment even if he had not developed the heart condition.
Statutory Penalties and Attorney's Fees
A compensation insurer or employer is liable for statutory penalties and attorney's fees when it is arbitrary and capricious in terminating benefits. It is incumbent upon insurers and employers to make reasonable efforts to ascertain the worker's exact medical condition at the time benefits are discontinued. A determination of whether the termination of compensation benefits is arbitrary, capricious or without probable cause depends primarily upon the facts existing and known to the employer or its insurer at the time payments were stopped. The determination of this issue is essentially a question of fact. In the event that there exists a substantial issue as to whether a disabled employee is entitled to compensation benefits, penalties should be denied. The termination of or failure to pay benefits is not arbitrary and capricious when it is based upon substantial bona fide factual contentions. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Latiolais v. Home Insurance Company, supra; Thibodeaux v. Atena Casualty & Surety Company, 454 So.2d 1141 (La.App. 1st Cir.1984), and Harrison v. Chicago Mill & Lumber Company, 446 So.2d 843 (La.App. 2d Cir.1984).
Plaintiff argues that the trial court erred in not finding the defendant's actions to be arbitrary, capricious and without probable cause in terminating benefits and thus erred in not granting statutory penalties and attorney's fees. We find this argument to be without merit.
The evidence at trial established that defendant terminated plaintiff's benefits upon its receipt of the report of Dr. Bailey dated July 22, 1980 releasing plaintiff from his care. The defendant equated this release with a release to return to work. The defendant continued plaintiff on worker's compensation benefits until September 16, 1980 when he was switched over to the A & S and LTD benefits for his disabling heart *743 condition so as plaintiff would have no loss of income. The defendant would have returned plaintiff to his previous employment or other employment within the plant had plaintiff not suffered from a heart condition.
We find that defendant was not arbitrary, capricious and without probable cause in terminating plaintiff's compensation benefits based upon the facts known to it at the time the benefits were terminated. It appears that defendant acted in good faith in continuing plaintiff on his worker's compensation benefits until the A & S and LTD benefits could commence for plaintiff's heart condition believing that plaintiff could resume employment except for his heart condition. Considering the medical report releasing plaintiff from Dr. Bailey's care together with the confusion which resulted as a result of plaintiff's intervening heart condition, it cannot be said that defendant's termination of worker's compensation benefits was arbitrary, capricious and without probable cause so as to entitle plaintiff to statutory penalties and attorney's fees.
Offset of Benefits
Defendant argues that should this court find plaintiff was permanently partially disabled then defendant is entitled to an offset for the A & S and LTD benefits paid to plaintiff. Defendant bases this argument on the plan language noted above which states that if an employee is off due to a work-related injury for which he is receiving compensation benefits and then receives a concurrent or subsequent disability, such concurrent or subsequent disability is not covered by the insurance plan. Thus, if plaintiff was entitled to further worker's compensation benefits, he would not be entitled to the plan benefits for his heart condition until such time as his worker's compensation benefits terminated and defendant would be entitled to a credit for the plan benefits paid during such additional time. We find this argument to be without merit.
As noted above, the A & S and LTD plans specifically excluded benefits for a work-related illness or disability and concurrent or subsequent disabilities occurring during the same period of disability. While the language of the plan may be clear and unambiguous, such plan provisions are not determative of this issue. Rather, the focal point of the inquiry should be directed to the question of whether or not the worker's compensation statute will permit such an offset. In other words, if the worker's compensation statute does not permit such an offset, then it is not available to the employer regardless of the language of the disability plan.
The only statute in effect in 1979 which specifically addressed the availability of reduction of compensation benefits on the basis of employee's receipt of other disability benefits was La.R.S. 23:1225(A). However, that statute provided such a reduction or offset only for the employee's receipt of social security benefits and did not address the employee's receipt of disability payments from private disability plans. Further, that statute was applicable only to benefits paid for total permanent disability. See Bourgeois v. South Central Bell Telephone Company, 407 So.2d 1245 (La.App. 4th Cir.1981).
As the benefits paid in this case were paid under a private disability income plan for a permanent partial disability, the statute is clearly inapplicable and does not authorize the offset requested by defendant.
In support of its claim of offset defendant relies primarily on the provisions of La.R.S. 23:1206 and argues that under the statute, the plan benefits were not due and payable when made.
La.R.S. 23:1206 provides:
Any voluntary payments made by the employer or his insurer either in money or otherwise, to the injured employee or his dependents, and accepted by the employee, which, by the terms of this act, were not due and payable when made, may, subject to the approval of the court, be deducted from the payments to be made as compensation; provided, that in case of disability, such deduction shall be made by shortening the period during which compensation shall be paid, and *744 not by reducing the amount of the periodical payments.
Defendant's argument is not persuasive. It is well established that in order for such benefits to be recoverable, they must have been intended as compensation when made. See Young v. Western Electric Company, Inc., 486 So.2d 962 (La.App. 1st Cir.1986) and Gonzales v. Coastal Wire Warehouse, Inc., 328 So.2d 923 (La.App. 4th Cir.1976).
In this case, the payments under the A & S and LTD plan were clearly not intended as compensation as defendant did not believe worker's compensation was due but were simply paid to satisfy defendant's contractual obligation under the terms of plaintiff's employment. In fact, no benefits were due under the plan if the illness or disability were work-related.
The specific language of La.R.S. 23:1206 authorizes the employer to recover only voluntary payments which were not due and payable when made. In this case, the employer was under a contractual obligation to make these disability payments to plaintiff. Thus they were not voluntarily made and were due and payable when made. As these payments were not intended as compensation, were not voluntarily made and were due and payable when made, La.R.S. 23:1206 clearly does not support defendant's claim for offset.
In addition to finding an absence of statutory support for defendant's claim of offset, we conclude La.R.S. 23:1205 would prohibit such a claim by this defendant-employer. La.R.S. 23:1205 provides in pertinent part:
Claims or payments due ... shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment.
Although defendant has postured its argument in terms of a claim of offset, in the absence of statutory authority for such an offset, it is effectively an attempt by defendant to enforce a claim as a creditor of the plaintiff. The essence of defendant's claim is that it has paid to plaintiff disability benefits which it now believes were not due. As defendant is merely a creditor of plaintiff in regard to this claim for reimbursement, the defendant has no right to "seize" the worker's compensation benefits under the guise of claiming offset.
Conclusion
For these reasons, the judgment of the trial court awarding plaintiff a scheduled loss rather than finding him permanently partially disabled is REVERSED. There is judgment in favor of plaintiff, Freddie L. Foster, and against defendant, Manville Forest Products, Inc., decreeing that plaintiff is permanently partially disabled and entitled to recover the sum of $148 per week for a period of 450 weeks, subject to a credit to defendant for worker's compensation benefits previously paid by defendant through September 16, 1980, together with judicial interest on each past due installment from due date until paid.
In all other respects, the judgment of the trial court is AFFIRMED.
Costs of this appeal are assessed to defendant, Manville Forest Products, Inc.

ON APPLICATION FOR REHEARING
Before HALL, FRED W. JONES, Jr., LINDSAY, MARVIN and SEXTON, JJ.
Rehearing denied.